The next argument is an Appeal 06-1169, PHG v. St John. Good morning. Please be seated. Mr. Schroeder, we'd like to begin as soon as you can be ready. Good morning. Welcome. Thank you. Robert Schroeder for the Appellant, St. John. I think the best vantage point from which to view this dispute is perhaps the Supreme Court's decision in Benito Vogt's case. Reminding us of the need to draw an important line between patent exclusive rights on one hand and what the Court referred to as a competitive economy on the other. And this Court's jurisprudence is in great measure in patent cases directed to drawing that line, and the Supreme Court referred to the difficulty of drawing that line. But it's usually approached more frequently in utility patent cases. All of that jurisprudence is undermined to a considerable extent if design patents can be used to monopolize the design of functional, not ornamental, products. I don't mean to derail you, but it would help me a lot more if instead of a general survey of policies of intellectual property, you would point out wherein lies clearly erroneous fact findings on likelihood of success or abuse of discretion and granting the injunctive relief you challenge. Exactly where did this judge go wrong? I think the precise point at which this judge went wrong was in placing far too much emphasis on a generalized statement by Mr. Moyer, the witness for the plaintiff, that there were multiple designs available, without saying what those multiple designs were. Now is it a question of what weight the judge as the fact finder should have given to that testimony, or is it a question of whether the judge used the wrong legal standard? I think primarily the judge used the wrong legal standard. Exactly what standard do you understand him to have used, and what's your basis? I believe it's page 22 of the decision your Honor, excuse me, page 12, in which the judge said, the testimony revealed there are a multitude of ways to arrange different sizes of labels on an 8 1⁄2 by 11 inch sheet. It seems to me, reading the whole decision, that if you want to find the point that it comes down to, it's precisely there. And so is it your position that the possibility of alternative designs is not an appropriate consideration to determine whether it's primarily functional or mental? Well, as held in the Barry Sterling case, it is one factor to be considered among others, added to the list. Then how is it a wrong legal standard? You're saying he considered one factor that we all agree is one of the appropriate factors. How is that error? Well, I think your Honor that you can conclude from the opinion that much too much emphasis was placed on it, or even that it was regarded as a conclusive factor in and of itself. Wait a minute. You say he regarded it as conclusive on page 12, which I think is the page you cited to me. Yes. He simply says it's more likely. That's the opposite of conclusive. Second paragraph, second line up from the bottom of the paragraph, citing to Avia Group International, he says, if there are several ways to achieve the function of the article of manufacturer comma, the design is more likely to serve a primarily ornamental purpose. More likely is not the same as, uh, are you on page 12? Dispositive. I think your problem counsel is, I think the language you were searching for is really appears on the bottom of page eight, 13. I'm sorry. So I page eight, 13. What I understood was the judge's ruling on the, this issue of arrangements is where he says the different sizes, blah, blah, blah, are primarily ornamental because there are other ways to arrange the sizes. So that's what I understood to be what you should be complaining about here or what you are. Isn't the problem here that you have a very good argument, but you didn't make it in front of the district court. And the very good argument is the arrangement of these labels is functional and it has to be done this way if you want to sell labels to use with the software, right? And you didn't make that argument down below. That's why, that's why the arrangement of these labels is functional because if they're arranged in a different way, you can't go to the hospitals, your client can't go to the hospitals and sell these forms because they won't work with the software unless they're arranged this way. Well, that's certainly a true statement, Your Honor. And it's also true that you didn't raise that, make that argument below, right? Yes, Your Honor. It's true that we didn't make that argument in those specific terms and the reason is that the preliminary injunction hearing was held before discovery began and we really didn't have that evidence at the time to show the link between the software and the printing on these particular label sheets. So Your Honor is quite correct that that specific argument was not made below. But I don't think that the absence of that evidence in the record can turn this label sheet that I'm holding here, which is in the exhibit book that we presented, that we filed, into something that's ornamental. It seems to me that without any reference to the software, this is not ornamental. And that is apparent from looking at it. It is not our burden here in the context of a preliminary injunction hearing to show clear and convincing evidence as would normally be the case, but merely to raise a doubt, to have an argument that has substantial merit to it. But the judge said that it was ornamental and the basis for that, as I read the judge's opinion, is because there are other ways to arrange the different labels. There are other ways to arrange the different labels, right? You could have the wide ones on the top rather than on the bottom. So you're not disputing there are other ways to arrange the different labels, correct? Just give me an answer to that one, please. There are other ways, that's correct. There are not a multitude of other ways. Well, I didn't use the term multitude. I understand. Okay. So there are other ways to arrange it. So you agree with the judge's conclusion with respect to the label sheet. So is your view that that's the wrong legal test to have applied to conclude that that in and of itself was sufficient to establish that it was ornamental? Is that your disagreement? I think, Your Honor, I disagree in two ways. First is the court did say at page 12 that there are a multitude of ways to arrange. Use that word, multitude. And we all agree with that. We've just agreed with that, right? No, I would not agree, Your Honor, that there are a multitude of ways. I would agree that there are two or three ways. There are other ways. Yes. Okay. So we agree with that. And I think that is an important distinction that if there were a... So you think the judge decided this between multitude versus many or several? I mean, do you think that was the basis for the judge's conclusion? I think that was a factor, Your Honor. I think if it were true that there were a hundred ways to make this design that were functionally equivalent, it would be a very different case. But given the fact that there are only a couple of ways, and even as to that, there was undisputed evidence that there was, there were functional reasons favoring this particular design over all other designs. Let's stick with the... So before we get to the functional, let's stick with it. So are you saying that the legal test is that if there are a multitude, however many a multitude consists of, there's multitude, that's the legal test? If it's a multitude of ways to arrange it, then it's ornamental, but if there are only two or three, then it's not? Is that what the legal test is here? No. The proper legal standard is that no one by themselves should never be the deciding factor. However, it would carry... Well, we have a case that says that because there are a number of cases cited, and one of them that everybody cites, I think, is L.A. Gear, and there at least is language in the L.A. Gear case that says when there are several ways, not a multitude, but several, several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose. So they're talking about several ways in L.A. Gear. That's correct, Your Honor. And they're saying at least that it's more likely to serve a primarily ornamental purpose. So do we all agree that that's the standard? Yes, Your Honor, but I think also the Berry case ought to be looked at in that regard, because I think that Berry suggests that this particular factor is of lesser importance than one might think merely by reading L.A. Gear. And I also think that Berry clearly indicates that this is a factor to be weighed among a group of other factors. It seems to me that the weight to be given to that factor would be greater if there were only a couple of alternatives available, whereas if there were a multitude, then that factor would have more weight. I do think that makes sense. So what do we weigh? Okay, so at least I think I understand your position a little more clearly. So you're saying it's given some weight, even less weight than it might because it's got several versus a multitude. Yes. And then your view is that even though it's given some weight, there was what? There was so much evidence on the other side on functionality that you should win. There's a substantial  weight, regardless of that factor, Your Honor, and I would point to two things. First of all, the conclusion that there are a multitude of other ways to design this label sheet, yes, most certainly there is a multitude of ways to design label sheets. For example, you could put only one label on the sheet. That would be one alternative. The question is, are these other ways functionally equivalent? Is there a functional reason for designing this particular label sheet in this way? And the answer is that if you look at the original utility application from which this design patent ultimately sprung, you can go through that application and see that every particular facet of this label sheet, every characteristic of its design that could possibly be described, was claimed as a functional advantage. But what if that happened? So what? I mean, they may have improperly claimed it. Under our Roscoe decision, in order to show, we said functionality is a stringent test, and you have to show that there's no other way of doing it that can achieve the function. And you haven't shown that here. You may be able to on the remand because this is the only way to use it with the software, but that's not before us. You've admitted you didn't raise that. This record doesn't show there's no other way to arrange the labels and still perform the function. Well, first of all, I would say the record does show that because that's an admission by PHG before the patent office in the prosecution of the parent application. Secondly, I don't think that that is the proper standard, although perhaps the Roscoe decision can be read that way. There are many other decisions, including L.A. Gear and Power Control, which say that a design is patentable only, as a design patent, only if it is primarily ornamental. Now, primarily ornamental is a very different standard from saying there must be no other way to do it. If two engineers approach an entirely functional problem... No, Your Honor. I would not agree with that because the prosecution history illustrates that the Roscoe standard is met in this case. Well, was the prosecution history in the utility patent application put before the judge in the preliminary hearing record? Yes, it was, Your Honor. The evidence was before the judge, and it's in the record here. And it seems to me... Of this proceeding, not some later proceeding. Yes, this proceeding, Your Honor. And it's in the appendix here before the court. It seems to me that when the patentee has gone before the patent office and represented that each of these features are appropriate for being claimed in a utility application and explained why... Yeah, but the claim isn't to a sheet with the labels. The claim is to a whole system for printing labels. No, Your Honor. The patent application to which we refer has nothing to do with printers or systems. It is directed to exactly the same article that is the subject of the design patent. There's no difference whatsoever. What claim is that? Which claim, Your Honor? Yeah. I believe it's claimed... Well, we've listed the claims in the brief, and it's a dependent... If you add them all up, there is no feature of this label sheet that you can possibly point to that was not claimed in that utility application. Every feature. I don't understand. So what? I mean, the fact that they tried to claim it doesn't mean that the function dictates this design, does it? Why does that necessarily follow that because they claimed it in a utility patent, that the function dictates the design? Well, certainly, Your Honor, it would be inappropriate to submit to the patent office a design... a claim limitation, saying this patent should be allowed because of this limitation, a utility patent, if that limitation were directed to only aesthetic features and not utilitarian features of the device. Now, of course, they may... Well, what if they're both? We have lots of cases about where a particular feature is both functional and ornamental. Well, I don't think that's precisely accurate, Your Honor. We have cases in which the same article has functional features and ornamental features, and therefore is appropriate for both types of patents. But we don't have cases in which the Court has held that the very same feature can be both functional and ornamental. And the problem here is that there is no feature left after you go through the prosecution history. Well, what are you really saying, that they were stopped from even filing the design patent application because they had previously filed a utility application, one claim limitation of which was this sheet? You know, Your Honor, it was not... the sheet was not a claim limitation. The sheet itself was the subject of the utility application, just the label sheet, not the system in which it's used. And they claimed the precise dimensions and location of every label on that sheet in the utility application. And are you saying, therefore, they were stopped from even filing a design application on the same sheet? No. What I'm saying is... Are you saying the Patent Office is stopped from issuing such a design patent? No, I'm not... Are you saying we're forced to rule in your way because of the utility application they filed? No. Your Honor, let me state that very precisely. What I'm saying is that when the patentee has previously taken a position in an effort to get a utility patent issued, that each aspect of the design is functional, then the defense of functionality in the context of a preliminary injunction hearing has sufficient merit that a preliminary injunction should not issue. It may be that the evidence in the prosecution history of functionality can later be overcome at a trial if the witness wants to take the stand and say, what we told the Patent Office was an error, this is really an ornamental design. But to defeat the preliminary injunction, all we have... I don't mean to cut you off, but I have one more short area, if it's okay. That is, assuming hypothetically that we were to think that there was no question of validity of infringement, in the briefs, but mainly in the red brief and then in the gray brief, there's some discussion and debate between the parties on the correct standard for issuing preliminary injunctions. Namely, the question of whether or not irreparable harm, if there's a rebuttable presumption of irreparable harm or not, or so forth. I don't, in my view, so tell me if you disagree, you haven't really raised that, you haven't preserved that. Your appeal seems to be focused on solely the validity and infringement questions, and even though there's some subsequent discussion about the irreparable harm standard, it doesn't seem to me that you have raised that as an issue on appeal in terms of whether or not the irreparable harm has been met. Am I right about that? That's correct, Your Honor. So it's not subject, it's not an issue in this case? Our view is that in every case of a preliminary injunction, likelihood of success on the merit must be proven. If that can't be proven, then the other factors become irrelevant. But if we disagree as to whether or not it's been proven, then you're not challenging the irreparable harm? That's correct, Your Honor. Thank you. Thank you, sir. Thank you. Ms. Speed. Preliminarily, where were you at 930 this morning? Your Honor, I did call into the court. I had a medical emergency this morning. I can be more specific if Your Honor would like for me to. No need to be more specific here and now, but I appreciate being told that you at least communicated with the court that your arrival would be delayed beyond the time you were due. I did, Your Honor. Thank you very much. Most definitely, before 930, in fact. Please proceed. Your Honors, the court did not err below when it issued the preliminary injunction. The court properly found all of the court problems were met before. What's the current status of the case, just before you get into your argument? What's the current status? The case is currently set for trial the second week of December, I believe it is, December 12th. Right now, there are many pending motions, but in particular, there's a pending motion from the defendant to continue the trial date. Okay. Thank you. Your Honors, down below, the court did find that there was a reasonable likelihood of success in the merits. They found this because they found that PHG will likely approve infringement. They disregarded the argument that, with the absence of black lines on the page. Yeah, the black line thing. That's a problem, okay? And this is on page 17 of the appendix. My impression is that the district court may have misunderstood the patent office rules in this respect. That the black lines are part of the design, and the patent office rule appears to say that they must be considered to be part of the design, and that only dotted lines are not part of the design. So, what's your response to that? Your Honor, the court did find that the black lines shown in the drawings and the figures of the patents are included in the claims. What they disregarded, Your Honor, is if we look to the physical exhibits that were presented by the appellant, what they disregarded was the argument that the design patent required that there actually be printed black lines on the page of the infringing article. That's what they did. No, but I think he said, if you look at page 17, he says, the comparison I make is between the design patent without the black lines and the infringing product. And that strikes me as perhaps the wrong comparison. That part of the design patent is the black lines under the patent office rules, and he's ignored that aspect of the design patent in making the comparison. I'm sorry, Your Honor, you're looking at page 17 of the appendix where it's read, reads, consequently the court determines it is improper to compare St. John's product to PHG's product with black lines drawn on it to resemble the drawing of PHG's 405 design patent. That would be black lines drawn onto the product itself. St. John's argument down below is that in order for infringement to occur, that there must actually be black lines imprinted on the infringing article. And the court held that's not the standard, that instead, that the standard is required under 37 CFR 1.152 that the black lines shown in the drawings and the figures of the design patents can indicate contours. And that, in fact, is what is represented by the lines, the black lines in the drawings themselves. They only represent contours and not black lines on the sheet? That's correct, Your Honor. It is die cuts that are shown by looking at the product itself. You can easily see those. Where's the language in the patent office rule? It's represented on A16. A16. A16, yes, Your Honor, which is part of the district court's decision. Appropriate and adequate surface shading should be used to show the character or contour of the surfaces represented. Yeah, but the sentence that follows that says solid black surface shading is not permitted except when used to represent the color black as well as color contrast. Yes, Your Honor. This is not shading. The black lines shown in the figures are not shading. They are to distinguish the different features. And this is, the district court also recognized that this is standard drawing for other label sheets. I don't know. In the MPEP, it says the ornamental design which is being claimed must be shown in solid lines in the drawing. Yes, Your Honor. And that's what's been So. Pardon me. I don't know. I'm confused. Down below, Your Honor, if we first refer to the design patents themselves, the design patents themselves require that the elements that are claimed be shown in solid black lines. Your Honor, there's no other way to show a distinguishing barrier between labels on a sheet other than with black lines. That does not necessarily require for infringement to be found that the product that is alleged to infringe has solid black lines in it. Well, how is one supposed to, if you wanted to show black lines in the design patent between the labels as opposed to showing an indentation or depression, how would you do that? You could make a notation on the design patent itself that that's what you're claiming, Your Honor. You can make that limitation on the design patent itself. I suppose you could have made a notation the other way, too, that the black lines are just showing indentations instead of black lines. That's not required by the Patent Office, though. Your Honor, there's a whole line of other patents that have been issued to other parties in which a solid black line shows the demarcation between labels on a sheet, and the district court includes a reference to several of those showing that is the standard procedure. Let me, with some trepidation, let me turn to the questions we were raising with the counsel about the proper standard. I mean, I read the district court's opinion in this case, which we've talked about before, is that he says they're primarily ornamental because there are other ways to arrange different sizes. Is it your view that, as a matter of law, if there are two ways, another way, if something is arranged in one way and there is one other way to arrange it to serve the same purpose, then that's sufficient to establish the validity or avoid a substantial question of validity and make it ornamental, primarily ornamental? Your Honor, if there are alternative ways to design the article. Well, I just asked, my question was, if there's one other way to decide it, then that establishes the fact, the basis for saying it's primarily ornamental. Your Honor, it's within the court's discretion. If, based on the facts, the court finds that one other alternative way is sufficient, then yes, Your Honor. The court doesn't have to other factors were cited in Berry-Sterling. In fact, in Berry-Sterling, the court specifically says, consideration of alternative designs, if present, is a useful tool that may allow the court to conclude that a challenge design is not invalid for functionality. But I'm asking you if this is the only thing, if that's the only thing, if there are no other factors and the only thing with regard to establish ornamentality, that's a word, is that there's one other way to arrange this, then you're saying that as a matter of law, that's legally sufficient to establish that it's primarily ornamental for purposes of validity? Yes, Your Honor. I do believe that. Berry-Sterling instructs that it's not legal error to only conclude with that one factor. But instead, the court can look to additional factors. But it's not legal error to conclude on that one factor, that there's a lack of invalidity shown on functionality. Does that create a per se rule that any time there's more than one arrangement that's possible, that the design patent must be viewed as valid? No, Your Honor. I don't think there's a per se rule that should come out of that at all. So it just opens the door, but it doesn't settle the result? Yes, Your Honor. Well, then what more needs to be shown to establish validity or a likelihood that invalidity can't be proven? Your Honor, I'm saying that there's not a per se rule that if there's one alternative design, then by that one fact alone, there is no functionality, there's no invalidity on the facts, that may be sufficient. And it's not clear error if it's not, though. I'm a little confused. I am, too. Let's assume the only thing, except this, the only thing the court relied on was the fact that there was one other way to arrange that. The only basis upon which we can discern that the court found it was primarily ornamental was that there was one alternative arrangement. Now you're saying that's fine. Establishes what? Let me clear, let me make sure I'm clear on what you're asking. Are you asking a hypothetical or are you saying that the court found there was only one alternative way to arrange these labels on the sheet? Well, he says, the court says there are other ways, but for purposes of my question, I'm saying let's assume there's one other way. Okay. Is that sufficient? Are we supposed to affirm that that's sufficient? He found the district court finds one other way to arrange it. Therefore, on that basis and that basis alone, I conclude that it's primarily ornamental. We just absolute affirm. Under that hypothetical, yes, Your Honor, because there's not been a showing of clear error. But in the actual case itself, the testimony was there were multiple ways to arrange the labels on the sheet and there's more detailed testimony. The court just didn't recite it in the opinion. The court acknowledges it. What proof was there that purchasers care about the aesthetics of the arrangement of the three different sized labels on a standard eight and a half by 11 sheet of backing paper? Your Honor, I don't recall that there was proof of customers particularly being interested in the appearance, but the testimony was that the inventors chose this because they liked it. They selected this particular arrangement because they liked the flow. They liked the look. Yes, but why would that be sufficient? It seems like in analysis of ornamentality, the relevant public is they who buy the arrangement of the possible two, but the customers couldn't care less which of the two arrangements is offered for sale. And it looks to me like there's a big doubt about whether the arrangement can be said to meet the ornamentality requirement of design patent law. Your Honor, the ornamentality requirement is not that there be a standard of artistry. It's not that standard. No, I'm not suggesting that. I'm suggesting it has to matter to those who buy the product. If they couldn't care less, then it doesn't qualify as protectable. Your Honor, there was no proof down below from the defendant who had the burden of proving that to show that there was a question of whether a consumer purchases the product or doesn't purchase the product based on appearance alone. Well, that may be, but my question to you is whether you put in any evidence that customers care, that hospital form buyers will buy one arrangement in preference over another because it's aesthetically more pleasing. No, Your Honor. PHG did not put that proof on. PHG is the plaintiff put on proof showing that the inventors tried multiple arrangements. It's hard for me to understand why a clerk in a hospital or the buyer for the wristband size labels at the bottom of the sheet or at the top of the sheet. Obviously, if the clerk is going to prepare a label for a file, the clerk types in the characters that will go on the file size one. If the clerk is preparing a wristband label, the clerk will type in my name on the wristband size form. It would seem to make no difference whether the wristband size form is on row one of 11 rows or row 11 of 11 rows. And therein is the argument that alternative designs function just as well. Your Honor, I think it's important to point out that the patents themselves, the design patents at issue, are not limited to being used for patient identification. This is drawing in limitations from the utility application. The design patents, Your Honor, very specifically state the title, which is the only limitation, Medical Label Sheet for the 405. And the 197 is entitled Label Pattern for a Medical Label Sheet. Under this court's precedent, Your Honor, it is improper to read in limitations for use of these from the physical embodiment in the marketplace. Your Honor, under Goodyear Tire versus Hercules Tire, the court said- I don't understand your point. What's the implication of what you're saying? What I'm saying, Your Honor, is that the court is reading in and the defendant is reading in the limitation that- What court? The trial court? No. I'm sorry. From the hypothetical that was just raised. There's no indication on the design patents that any label is for a wristband or is for a chart label. It's just a layout and arrangement of differently sized labels on a sheet. It's improper to read in these limitations. They're not there. The design patents themselves don't show them. I don't think I was reading in any limitations. I don't follow what you're saying. The defendant has argued down below, Your Honor, at the district court level and has brought it to this court that it is important that they believe that the patents themselves should be construed not only to include limitations from manufacturing specifications, which is improper under Barry Sterling, but also to include limitations from the utility application that are not shown. But you didn't argue that here. By saying that the utility application necessarily includes every limitation of design they have, Your Honor, because that ignores the fact that the claims in the utility application specifically include additional features, every one of them. Let me go back to the point that the Chief raised earlier about who's the customer and whether ornamentality is judged by the fact that the designers happen to like it better and have nothing to do with it. Is it your view, and I've not thought, is that everything has to fall into one of two categories? Either it's primarily functional or it's primarily ornamental, and those are the only choices. We've got to pick one of the two. Or is the universe, maybe some things happen arbitrarily or accidentally, but is it your view that they're only under our case law when we talk about it, two boxes and only two boxes, and we've got to figure out which box is the appropriate one? Your Honor, no. I don't think that there are only two boxes, which is primarily functional and primarily ornamental, because the standard for patentability is novelty, non-obviousness, and ornamentality. So that necessarily leaves open, if it's not ornamental, in some instance, then it may not be patentable under the Design Patent Statute. But, Your Honor, the case law shows that if it is not primarily functional, then it is likely to be patentable. And, Your Honor, the Patent Office examined not one but two applications and passed them both finding that they satisfied the requirements for patentability, including the ornamentality. There was no office action issued that even questioned that. The prosecution history is devoid of any finding of that. All right. Thank you. Mr. Schroeder. Thank you, Your Honors. You have three minutes or so for rebuttal. First of all, I'd like to read just one part of the Barry Sterling decision in the next to last paragraph. Alternative designs join the list of other appropriate considerations for assessing whether the patented design as a whole, its overall appearance, was dictated by functional considerations, other appropriate considerations might include, and it goes on with the list. I don't think that the district court's analysis is consistent with that holding. I'd like to address the question Your Honor raised as to the evidence in the record as to the preferences of hospital buyers or their concern with ornamentality. There is no evidence in this record, none whatsoever, that hospital buyers care in the least about ornamentality. And is it your view that that's what's required and that's the test and that's what we have to look at for it? No, Your Honor. That's not the test. Again, it is one of these factors, I believe, that needs to be considered along with are there other designs, are there very many other designs. It's a factor. There is no one dispositive factor. Did you offer any evidence that there was no ornamental consideration here because neither the buyers nor the users cared or would? Yes, Your Honor, and in great detail through the testimony of Adam Press at the preliminary injunction hearing, Mr. Press first of all testified of the great concern that hospitals have with the efficiency of these labels and he explained what their concerns were. He said that he has 60 salesmen on the road and he travels with them constantly and has done so for many years and he has never even once heard a hospital buyer express the slightest concern with the ornamentality or decorative nature of a label sheet. He further said, and I think this is a point that bears noting, that even the positioning of those wristband labels, the elongated labels at the bottom of the sheet, and I'll refer here to the demonstration label so that this can be seen, this is an adult wristband label and why is it here? Because there are holes for binding on the side and on the top. This is the corner that is always free. When a patient is admitted, this label is always used and it's used first and that's why it's in that corner. And Mr. Press explained that from the witness stand and nothing was introduced to rebut that. Now if I just have a moment, I'd like to comment with respect to the issue of infringement and I don't mean to downplay that but there just wasn't enough time really. But I do think the point is this. You didn't put in any evidence that the functionality considerations dictated the particular design that we have before us here. Well, we did, Your Honor, in the form of the testimony of Mr. Press and the prosecution history of the earlier. Put aside the prosecution history. Pardon me? Put aside the prosecution history. Yes. There's no testimony. There's a testimony that one aspect of this arrangement or maybe two aspects of this arrangement are important to functionality. But there's no testimony that the whole arrangement of this thing, the sheet of labels, is dictated by function. I don't recall, Your Honor, that anybody ever said that in so many words. What Mr. Press did was discuss the various aspects of the thing individually and say these labels are the upper labels, the chart labels of the size they are and this is the reason a certain amount of information goes on. So that was discussed. But certainly the prosecution history, and we can say aside from the prosecution history, but it's really not aside from the prosecution history. That's very strong evidence because it comes from the mouths of the inventors. What I wanted to say, and I'll be very brief about the infringement is this, that we're looking at this from the point of view of appearance or design. And, therefore, to say that these lines indicate where one label ends and another begins, we're speaking in functional terms. We should be speaking in terms of appearance. Now design patents have almost no scope, as this Court has said on several occasions. That being the case, a single design patent can't cover this and every gradation of the prominence of these lines from invisible to the naked eye through something much thicker than this. It's just not possible. And I think that in the absence of any indication to the contrary, such as a statement in the patent itself, that these lines represent cut lines between the labels, one must assume that the patent covers something that looks like the design shown in the patent. Time has long since expired. Thank you. Thank you.